# CASES

# APPELLATE COURTS OF ILLINOIS

## FOURTH DISTRICT—FEBRUARY TERM, 1895.

### James W. Hays v. John Beaird, Jr.

1. AGENT—*Not to Acquire Title as Against His Principal.*—Where, by an agreement between a vendor and vendee of a race-horse, proceedings by attachment and a sale of the horse thereunder were had for the avowed purpose of getting a better title, a person who is assisting the vendee in the matter by bidding in the horse at the sale for the vendee, gets no title by afterward paying the amount of the bid, which he can assert against the vendee in an action of replevin.

Replevin.—Appeal from the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding. Heard in this court at the February term, 1895. Reversed and remanded. Opinion filed July 1, 1895.

A. FLANNIGEN, attorney for appellant.

TURNER & HOLDER, attorneys for appellee.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.
The appellant replevied from appellee a race-horse named "Bugle." On the trial, after all the evidence on both sides was introduced, the jury, under the instruction of the court, returned a verdict for the defendant, on which judgment was rendered, from which this appeal was taken. The facts are, (1) the horse was owned by one Armstrong, who placed him in the care of appellant, to whom he became

indebted in the sum of $500, for which amount the horse was sold to appellant; (2) for some unexplained reason, notwithstanding such sale, it was concluded best to run an attachment on the horse for said $500, and get title by sale thereunder; (3) after the attachment, it was agreed between Armstrong and Hays the horse should be sold as perishable property before the hearing on the attachment, which was an amicable proceeding; (4) at such sale it was agreed between the parties no money would be paid, but that the horse should be bid off for $250, although the horse was to satisfy the debt of $500; (5) he was bid off for that sum by appellee, for himself, as he claims, but for appellant, as sworn to by three witnesses. No money was paid by any one at the time, although afterward appellee paid the sheriff the $250, which was received by appellant; (6) three witnesses testify the possession, after the sale, was taken by appellant; this is denied by appellee, who claims he took possession; (7) two witnesses declare that after the sale and after appellant had so taken possession of the horse, several days thereafter, the appellant and appellee agreed that appellee should take the horse during the absence of appellant in Indiana, and race him, for appellant's benefit; this is denied by appellee, although he admits appellant's hired man took the horse into possession after the sale; (8) appellee did race the horse, and, as two witnesses testify, earned thereby in purses over $600, in a short time; (9) on appellant's return, in about two weeks, he demanded the horse, but, as testified to by two witnesses, appellee put the matter off, saying he wanted a settlement, claiming that appellant was owing him $100 for money loaned, $250 paid on the horse, and some $120 for feed and care, making $470. He was told to take this money out of what the horse had earned. No adjustment of the matter was obtained, until finally, as claimed by appellant, when pressed, he then claimed he had bought the horse for himself, whereupon this suit in replevin was brought. The evidence of appellant further shows that the sheriff was informed at the sale that no money was to be paid and that appellee, when asked

why he paid afterward, the $250, replied that he thought it would give him a better title to the horse; that he did not claim at such time the horse was his, but that he would charge that sum in the account. Although the evidence is not clear on this point, yet it appears from the testimony of appellant that at such time appellee had earned several hundred dollars racing the horse. Appellant claims that he received the $250, not for the sale of the horse, but merely as a credit on what appellee owed on the earnings of the horse; that the money was paid the sheriff contrary to the agreement, and that it was all supposed to be amicable, and understood. It is undisputed the sale of the horse was made under the attachment for the supposed purpose of getting a better title. The appellee was at the time assisting appellant in the arrangement. The evidence then tends sharply to show (1) the horse was appellant's, under an agreement with Armstrong, the owner, to satisfy a debt of $500; (2) that the attachment was a friendly agreement, to which Armstrong entered his appearance and consented to the sale of the horse; (3) that the horse was bid in by Beaird for appellant, and that appellant then and there took possession of him; (4) that appellee got possession of the horse thereafter as bailee for appellant, to race him for appellant's benefit; (5) and that he received in purses, money over $600, which belonged to appellant. In view of this evidence, the court erred in instructing the jury to find for the defendant. The fact appellee paid the $250 to the sheriff, in view of the evidence did not estop the appellant from claiming the horse, neither could he thereby make the horse a pledge for its re-payment, if there was no understanding to that effect, if the facts are as stated by appellant, which were matters for determination by the jury. This court is not passing on the facts, further than to hold there was no estoppel in law that prevented their submission to the jury. The judgment is reversed and the cause remanded.